JAMES JACKSON, plaintiff in error, vs. JOEL DEESE, JAMES BLOODWORTH, and EPSEY MURKINSON, administratrix of BENJAMIN MURKINSON, deceased, defendants in error.

[1] It is error to refuse an application for a writ of partition to divide mills which were partnership property, upon the ground that the time had not elapsed fixed for the dissolution by the articles. There being many causes for which a dissolution will be decreed before the expiration of said time.

[2] Under the Code, and particularly Sections 3015 and 3906 thereof, it is not proper to force a party to go into Equity, to obtain a decree for the dissolution of co-partnership in milling property, before applying for a writ of partion to divide such property.

[3] In all extraordinary cases the common law Court may so frame its proceedings and order as to meet the exigency of the case, and the verdict and judgment may be so moulded as to mete out justice to all parties as by decrees rendered in equitable proceedings.

Application for Writ of Partition. In Wilkinson Superior Court. Decided by Judge A. REESE. October Term, 1866.

. Jackson, the plaintiff in error, after giving the requisite notice under the Code, presented to the Superior Court of Wilkinson county, his petition praying for the appointment of commissioners to partition among himself and the defendants in error, (he claiming one-fourth,) certain premises known as the Deese & Jackson mill tract, being a mill seat, and such lands (one hundred acres more or less) as are necessary for yard, pond, dams, etc., and having thereon a grist and saw mill, with machinery and other appurtenances.

Two of the defendants in error, towit, Deese and Bloodworth showed cause against said application, by their answer on oath, referring therein to a contract of partnership, of which the following is a copy :

" GEORGIA,     }
  Wilkinson County. }

               This agreement made and entered into this the sixth day of August, 1864, between James Jackson, Joel Deese, James Bloodworth and B. F. Murkinson, all of said county and State, witnesseth :

1st. That the parties all agree to erect a grist mill at the mill seat known as the Deese & Jackson mill, near Toombsboro' C. R. Road, and such other improvements and buildings as the majority of the parties may be able and find necessary to do from time to time.

2d. That the parties do agree each to furnish an equal portion of the labor, cause the same to be done in and about the mill, and the repairing of the same in proper repair; provided, always, that the said Bloodworth and Murkinson shall do or cause to be done all the mechanical labor during the partnership.

3d. That the material used in and about the mill, or any addition or improvements thereto added, shall be furnished equally, share and share alike, by the parties.

4th. That the parties shall furnish and feed their own laborers at their own expense, but Bloodworth and Murkinson shall keep a correct account of all the labor done, and by

which partner, and notify a partner when in arrears of labor or material.

5th. That Bloodworth and Murkinson shall have exclusive control and management of the mill, and shall be the judges of any and all repairs and improvements, and the plans of said repairs and improvements.

6th. That each partner shall be entitled to one-fourth part of the grain, and one-fourth of the profits of any improvements that may be added or made.

7th. Bloodworth and Murkinson shall employ the miller upon such terms as they see fit, at the expense of the partners; provided the miller shall sleep not more than one hundred yards from the mill, and shall do his eating not more than one hundred yards, they using all due diligence for the best interest of the concern.

8th. That Bloodworth and Murkinson shall keep correct books, which shall be open to inspection to any and all the partners, at any time, and shall have the books up for settlement the first of every December after this date, at which time, or as soon thereafter as possible, a general settlement shall be had and accounts balanced.

9th. That when a partner shall die, if such event should happen before a final dissolution of the partnership, his share in the concern shall be sold at public outcry to the highest bidder, by the executor or administrator.

10th. That in the event Murkinson or Bloodworth shall die, and their interest be sold, then the partners shall all come together, and of their number nominate one who shall have control with the survivor, Murkinson or Bloodworth, as the deceased partner had.

11th. The partnership shall last for five years, unless by consent of all the partners, given in writing, it shall be dissolved sooner.

(*Signed by all the parties under their seals and attested by two witnesses.*)

The answer alleged that under this contract the partners all went to work, but before the heavy timbers were

all procured and haulded to the mill-seat, Murkinson died, leaving no help in his place; that the other three continued the work until they raised the water frame, when Sherman's army came and destroyed everything upon the place as near as possible, cutting down what of the frame they failed to burn, and destroying every house, shop and bridge—this was on the 25th and 26th of November, 1864. That since that time, the respondents, (Jackson, though often requested so to do, not aiding them in any way or advancing any means for the purpose,) have replaced one grist mill and built a new saw mill out and out, not using twenty dollars worth of the machinery which formerly belonged to said mills; built a considerable forebay (with a view to having a machine shop) costing nearly as much as the saw mill frame; built a new bridge and repaired another; repaired the dam; built a blacksmith shop for the use of the firm; all costing fifteen hundred or two thousand dollars, and leaving the respondents without any means whatever, and wholly dependent upon the mills. That the respondents have not only thus expended all their available means, but are largely indebted for hired labor and for materials. That the mills, ordinary as the grist mill is, it being a mere *gritter*, the parties not being able to procure large or good rocks, etc., are the only means by which the respondents are able to procure bread, the crops having proved a failure. That the saw mill is the only means to raise money to pay off the hirelings that helped to build it, or to keep up the dam, waste ways, etc., which are still needing repairs. That respondents are not able to put said property upon the market on time, but Jackson is; and that to offer it for cash in the present condition of the country, when but few have the means to purchase, would leave their interest unprotected.

After Jackson had filed a replication (so it is termed on its face) to this answer, Bloodworth put in, on his own oath, another answer, calling it a rejoinder, in which he alleged that the foundation work of the mill, to-wit, the dam, the underwork of the frame, waste ways, etc., there at the time

of forming the partnership, and of great value, greater than that of the houses, are there still, never having been destroyed. That the destruction alluded to in the former answer, was of braces and sills above the foundation, and of machinery appended to the building, not the original property itself; and that if there was more machinery than alluded to, it was damaged so as to render it unfit for use.

The reception of this second answer is one of the errors assigned.

A jury having been waived by the parties, the Court disposed of the case by the following order:

" It appearing to the Court that the property for partition is the subject of a partnership which has not yet been dissolved nor expired. It is therefore ordered that said application be refused, and that defendants do recover costs, etc."

This order is excepted to as erroneous.

WINGFIELD and CUMMING, for plaintiff in error.

RIVERS, for defendants.

LUMPKIN, C. J.

The Court seems to have put its judgment refusing this application, upon the ground, "That the property for partition is the subject of a partnership, which had not yet been dissolved nor expired;" and this would have been sufficient, under the law as it stood before the adoption of the Code. The parties would have been compelled, first, to go into Equity, and obtain a decree for a dissolution of the partnership, and then apply for a partition of the mill property. But it is not so now, and it will require time for the profession to wake up so as to comprehend properly the full meaning of the Code, its length and breadth, height and depth. For this purpose let us cite some of its sections.

Section 3014 provides, " That Equity jurisdiction is established and allowed, for the protection and relief of parties, where, from any peculiar circumstances, the operation

Jackson vs. Deese, et. al.

of the general rules of law would be deficient in protecting from anticipated wrong, or relieving for injuries done."

Section 3015 : " No suitor, however, is compelled to appear on the equity side of the Court, but he may institute his proceeding for an equitable cause of action upon the common law side of the Court at his option, and the Court may allow the jury to find a verdict, and a judgment be rendered thereon, so moulded and framed to give equitable relief in the case, as verdicts and decrees are rendered and framed in equity proceedings."

It was said that every line in the Statute of Frauds was worth a subsidy. This section alone is far more deserving that eulogy, and it cannot be retorted to the latter, as it was of the former, that every line in it had cost the English people a subsidy in its construction.

Yet this great section was defeated for more than twenty years after its first introduction, the last time before its adoption in the Code, by a prominent Senator in the Legislature, now no more.

Section 3903, provides, that " whenever application is made for partition of lands and tenements, as hereinbefore provided for, and either of the parties in interest shall make it satisfactorily appear to the Court that a fair and equitable division of the lands and tenements cannot be made by means of metes and bounds, by reason of improvements made thereon, or by reason of the premises being valuable for mining purposes, or for the erection of mills or other machinery, or that the value of the entire lands and tenements will be depreciated by the partition applied for, then and in that case the Court shall order a sale of such lands and tenements, and shall appoint three discreet persons to conduct such sale, under such regulations, and upon such just and equitable terms as said Court may prescribe; which sale shall take place on the first Tuesday in the month, at the Court House of the county in which the land is situated, after an advertisement of such sale in some public gazette of this State for at least thirty days."

But Section 3906 is a *Carte Blanche* to the Courts upon this subject. It applies precisely to the case before us. It enacts that: "In any extraordinary case, not covered by the foregoing provisions, (in relation to partitions) the Court may frame its proceeding and order so as to meet the exigency of the case, without forcing the parties into a Court of equity, and the Court may deny a sale or partition altogether, if it is manifest that the interest of each party will not be fully protected."

There is, therefore, no want of jurisdiction in the common law Court, to adjudicate this controversy. Is the Judge right in holding, that the time not having expired limited by the terms of partnership, that the property is not subject to partition?

Notwithstanding the time has not elapsed limited by the articles of partnership, still there are many causes which may arise that will justify a dissolution. These are mentioned in all the books on the law of partnerships. I will not enumerate them. From the facts contained in the mutual altercations between these parties, the partnership is already dissolved, and the only question really is, how to make a proper disposition and division of the partnership effects between the several owners. Common reason teaches any man that the objects of this association have become impracticable, and that its further continuance can be productive of nothing else than serious loss and injury to some of the parties. By the destruction of the mill property by fire, caused by the Federal army, the want of means, from the emancipation of slave property, the taking and carrying away of the teams, &c., the men of means in the concern have been so impoverished and crippled that what remains of their property is hardly sufficient for sustenance, and cannot be rendered profitable if directed to this enterprise. Jackson, who was looked to mainly to supply capital, or its equivalent in labor, when this partnership was entered into, by misfortune, without fault on his part, has become unable to carry on the business without loss, instead of the profits

he hoped to realize from the partnership. War is assigned as one of the causes for dissolving a partnership. Not considering it applicable in the sense in which it is used by the writers, may it not be true, in a less technical sense, to this and many other cases scattered all over the land? The destruction of the property which is the subject matter of the copartnership, is another cause which will work a dissolution *per se*. The foregoing remark as to war may be applied to this ground.

But I will not extend these remarks. We are quite clear that if the partnership be not already dissolved, it should be declared so by the judgment of the Court.

What, then, is to be done with the partnership effects under this application, bearing in mind that the party shall not be forced into equity, but the Court is so to frame its proceedings and order as to meet the exigency of the case?

Let the case be reïnstated, and the Judge appoint commissioners to partition by sale the whole property belonging to the partners; that they be authorized to hear testimony as to the state of the accounts between the partners as to the property, and report back in writing to the Superior Court of Wilkinson county, together with a statement of the debts and liabilities of the copartnership, the said report, or any part of it, to be allowed or disallowed by the Court. That the Judge cause a special jury to be empanneled for this purpose who shall, by their verdict, assign to each partner such share of the money brought into Court from such sale as he is equitably entitled to, and find that said partnership as to the mill property shall be thence entirely dissolved, and that the Judge shall, upon such finding, so mould the judgment in the case as to cover all matters of controversy which were involved in said partnership.

If, in carrying out these instructions, difficulties may occur not anticipated by the Court, the Judge may, in his own discretion, enlarge his orders so as to meet and obviate them.

With these directions, we reverse the judgment of the Court below.

Judgment reversed.